IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

**TERRY BREWER,**

     Plaintiff,

  -v-

**Aaron Pineiro**, Warden,

Coastal State Prison;

**T. Fletcher**, Mental Health Director,

 Coastal State Prison;

**Dr. Fast**, Psychiatrist,

Coastal State Prison;

**Mr. Brown**, Lieutenant,

Coastal State Prison,

In their individual and official capacities,

     Defendants.

**Civil Action No.** 4:22-cv-00264-WTM-CLR

§1983 Prisoners' Rights Action

**JURY TRIAL DEMANDED**

## Plaintiff's Second Amended Complaint

Pursuant to Rule 15(c)(2) of the Federal Rules of Civil Procedure, Ms. TERRY BREWER, the Plaintiff in the above-styled action, does hereby submit the below Amended Complaint for full adoption and as the accurate recitation of facts and legal claims giving rise to the instant action before this Honorable Court.

1

I.     JURISDICTION

Plaintiff Brewer bring this lawsuit pursuant to 42 USC § 1983. This Court has jurisdiction under

28 USC §§ 1331 and 1343. Plaintiff also seeks declaratory judgment pursuant to 28 USC § 2201.

II.     VENUE

The Macon Division of the District Court for Middle Georgia is an appropriate venue under 28

USC § 1391 because the Plaintiff is within this Court's jurisdiction, presently housed at Central

State Prison.

III.     PARTIES

The Plaintiff, Ms. Terry Brewer, is suing the following Defendants in their individual and
official capacities:

- **Aaron Pineiro**, Warden, Coastal State Prison;

- **T. Fletcher**, Mental Health Director, Coastal State Prison;

- **Dr. Fast**, Psychiatrist, Coastal State Prison;

- **Mr. Brown**, Lieutenant, Coastal State Prison,

In their individual and official capacities,

IV.     EXHUASTION OF ADMINISTRATIVE REMEDIES

Plaintiff hereby avers that, pursuant to 42 USC § 1997e(a), she has faithfully exhausted all

available administrative remedies, despite substantial delays and interference by prison officials.

## V.   FACTUAL ALLEGATIONS

1. The Plaintiff isn't able to prepare this Complaint on her own due to significant mental health issues and severely underwhelming literacy and comprehension. The current Complaint is the Second Amended, being prepared and submitted *post litem motam.*

2. The Georgia Department of Corrections is currently under two investigations by the United States Department of Justice.

3. The first investigation, launched in 2016, is a CRIPA investigation into the prison agency's failure to protect LGBTQ+ prisoners from physical and sexual assault by other prisoners and staff.

4. The second investigation, launched September of 2021, is a CRIPA investigation into the prison agency's failure to curtail unprecedentedly high rates of gangs, violence, murder and suicide.

5. The Georgia Department of Corrections is acutely aware of how brutal and deadly its prisons' conditions presently are, especially for vulnerable portions of the prison demographic – like transgender prisoners.

6. On or about the week of April 26th, 2022, the Plaintiff, Ms. Terry Brewer, arrived at Coastal State Prison (CSP) after leaving Georgia Diagnostic and Classification Prison( hereafter, "GDCP"), in Jackson, Georgia.

7. While at GDCP the Plaintiff had an incredibly difficult time because of her status as a transgender woman. Although she reported her transgender status upon intake to GDCP, her transgender status had been officially notated by medical staff and security personnel on April 18th, 2022.

3

8. Despite known concerns and vulnerability with transgender prisoners, Plaintiff Brewer was housed in a non-PREA, non-protective unit. Other prisoners were singling her out, verbally and physically assailing her. After being attacked, she wrote letters of complaint which then resulted in her transfer to Coastal State Prison.

9. Upon arrival at CSP, Ms. Brewer identified herself as a transgender prisoner, informed staff that they could consult her records or the GDC electronic system known as SCRIB for confirmation, and she informed staff that she felt that her safety and wellbeing were in imminent serious danger of severe harm.

10. The staff that she spoke to were: Defendant Aaron Pineiro, Warden of Coastal State Prison; Defendant Fast, psychiatrist at Coastal State Prison; and Defendant T. Fletcher, the Mental Health Director at Coastal State Prison.

11. When speaking to Defendants Pineiro and Fletcher together upon intake day at CSP, she informed them that she did not feel safe, that she had been viciously attacked while at GDCP, and that credible threats to her life had been issued by gang members at GDCP when it became known that she was complaining about being attacked.

12. Plaintiff Brewer begged Defendant Pineiro and Defendant Fletcher for placement within the Protective Custody Unit (PC). Defendant Fletcher told Plaintiff Brewer "don't be so dramatic," while Defendant Pineiro said "request denied."

13. Plaintiff Brewer then went and spoke with the psychiatrist at Coastal State Prison, Defendant Fast, hoping that as the chief mental health clinician Fast might overrule or reason with Defendants Pineiro and Fletcher.

14. Plaintiff pleaded with Defendant Fast, saying that she seriously feared for her life and that she had already been assaulted for her identity as a visible Trans woman in a southern men's facility while at GDCP.

15. Defendant Fast said he would not intervene in Defendant Pineiro's decision on this matter and recommended that Ms. Brewer utilize the grievance process in response to her cries regarding her life being imperiled.

16. Every prison has its troublesome or volatile dorms, where more violent and dangerous offenders are housed. It is no different at Coastal State Prison.

17. Plaintiff Brewer was then assigned and housed in J building, C pod. This housing unit was one of the two worse in terms of violence, gangs, and drugs. This housing unit was (and remains, to the best of Plaintiff's knowledge) a place where known troublemakers and violent offenders were assigned for living placement by Defendant Pineiro and his administration.

18. Just two weeks after arrival at CSP, Ms. Brewer was cornered and mercilessly attacked by fellow prisoners in J building, C pod. Her attackers were gang affiliated prisoners, from the same gang that she warned Defendants Pineiro, Fletcher, and Fast about.

19. During this attack, Plaintiff Brewer sustained multiple injurious. Beyond a busted lip and several scratches, Ms. Brewer also sustained three (3) significant stab wounds by a prisoner-assailant wielding a knife. She was stabbed in the left, backside of her head; she was stabbed in the left side of her face; and she was stabbed in the arm. In addition, her jaw was broken.

20. Other prisoners somehow intervened enough to persuade Ms. Brewer's attackers to desist from further violence because "y'all about to kill that punk, man. I ain't trying to go through all this shit, with the shakedown man."

21. Around approximately 9 to 10pm, an officer came for a final callout for any prisoners who needed insulin. At that time, he noticed blood on Plaintiff Brewer's shirt. Upon seeing the blood and seeing that Ms. Brewer's countenance seemed distressed to him, he then called her out from the building and escorted her to the medical unit.

22. At medical, Ms. Brewer was assessed. Prison medical staff determined that Plaintiff's jaw was broken and would need to be wired, and she was thus referred to be sent to the ER at the local hospital.

23. Defendant Pineiro obstructed Plaintiff Brewer's access to emergency medical care, as he told medical staff via a phone call that Plaintiff Brewer's injuries "probably ain't even all that serious. We'll take a look at it in the morning."

24. The next morning, Plaintiff Brewer did go to the ER. There, doctors ordered that her jaw be wired shut by treatment of an outside specialist (a doctor outside of the prison system), that she avoid solid food for two (2) to three (3) months, and that she be given a nutrient-rich liquid diet.

25. Defendant Pineiro denied all requests for assignment to a specialist for two weeks. Then, even after Brewer saw a dentist and a specialist at Augusta State Medical Prison, Brewer was denied any additional assessments or necessary care. Defendant Pineiro told her point-blank, "We're not wiring your jaw, so you better hold it up with your hands or something."

6

26. When Plaintiff complained to medical, in an effort to work around Defendant Pineiro, they called for the Defendant. Upon arriving in medical and hearing what Plaintiff was inquiring about, Pineiro said, "he ain't special and we ain't gonna treat him special. Don't let him manipulate y'all. Tell me if he give y'all any problems."

27. Defendant Pineiro then walked Plaintiff Brewer to the kitchens and dining hall, where he then instructed kitchen staff that Brewer was not to receive liquid diets anymore (after having had a liquid diet for a month), despite the fact that no medical doctor had ordered discontinuation of a liquid diet. Pineiro said, "he can eat just like everyone else does."

28. Plaintiff tried to reason with Defendant Pineiro, trying to convince him of just how serious her injuries were, that she was still in danger, and that she needed him to see her as a person who was in need of his help as the warden of the facility. She was literally in tears, terrified for her life, for her safety, and for her health. She was in intense pain and struggling with crushing anxiety, fear and depression.

29. Defendant Pineiro responded by saying, "go on now, with that soft ass shit, or else I'll put your crying ass in the hole for 90 days"

30. Plaintiff was unable to eat solid foods as normally for more than 4 months and during this time, in which she was denied a liquid diet, she lost more than 50 lbs. She went from 210 lbs. to 163 lbs. within a 4 month period.

31. On or around the last week of August, 2022, approximately, Plaintiff Brewer was maced with OC Spray, at the behest of Defendant Pineiro, for doing literally nothing more than advocating for herself in a non-violent and non-threatening way.

32. She was trying to speak with Defendant Pineiro about her safety, about her still painful and poorly functioning jaw, about her involuntary weight loss, and about her mental

health. She was politely and respectfully advocating for herself at all times during this transaction and in no way she pose a threat or danger to any prisoner, personnel or property.

33. Defendant Pineiro threatened Ms. Brewer in response to her pleas, as he had previously, saying "I don't want to hear it!" and that he would "have LT. Brown spray your stupid ass down."

34. Eventually, after reaching his limit and after Plaintiff accused him of being corrupt and unconcerned with the wellbeing of those in his custody, Pineiro ordered Defendant Brown to use OC Spray on Plaintiff Brewer. Defendant Pineiro said, verbatim, "light his ass up with that mace, man. I don't know why he think he gonna run something, not at my camp. Spray his ass and lock his ass down".

35. Defendant Brown proceeded to spray the Plaintiff thoroughly with OC Spray, using an amount that can only be fairly characterized as "copious." Then, the Plaintiff was knocked down and physically dragged to a holding cell, where she was therein confined – without a medical checkup or the access to shower/rinse off spray – until the time she was transferred from CSP. Again, she received no access to medical after a use of force by Defendants.

36. Plaintiff Brewer was not posing any danger to prisoners, personnel, or property. There was simply no acceptable reason for Defendants to utilize force on the Plaintiff. This instance of force can only be defined as unwarranted, unlawful and capricious; a textbook example of excessive force that served absolutely no legitimate penalogical interest.

37. Plaintiff Brewer avers that this instance of unlawful, excessive force – amounting to an assault – occurred as an unconstitutional act of retaliation for attempting to exert her

8

rights under the U.S. Constitution to freedom of speech, self-expression, and the right to seek redress of grievances. Defendant Pineiro ordered Defendant Brown to perform a violent and illegal act for the sole purpose of making an example of Plaintiff for utilizing her rights to advocate on her own behalf.

38. As a result of Defendants' retaliation, she felt abandoned, that she might die, and as a result suffered severe panic attacks and ideations of suicide. She suffered significantly, with her lungs, eyes and body burning from the OC spray; but she also suffered psychoemotionally as a result of this traumatic, humiliating, and vicious act by the Defendants.

## VI.   CAUSES OF ACTION

### Count I

**Plaintiff Suffered Due To Defendants' Failure to Respond Reasonably in Order to Protect Her From Assault Despite Knowledge of a Substantial Risk of Serious Harm.**

Upon arrival at Coastal State Prison, Plaintiff Brewer notified all staff she came into contact with during the intake process, including medical and mental health staff, that she was a transgender prisoner and that she felt particularly vulnerable because of assaults and threats she had sustained at her previous facility. Per usual practice and custom of the Georgia Department of Corrections, her records and documentation of her transgender status would have been made available to staff at Coastal State Prison. Plaintiff Brewer personally spoke with Defendants Pineiro, Fast and T. Fletcher. During conversations with each of the above mentioned Defendants, she informed them of a very specific threat to her safety and wellbeing, citing gang violence she had been subjected

9

to at her previous camp and credible threats of future violence that had been issued to her. She informed Defendants of all the pertinent information available to her, including: names, nicknames, gang affiliation, and the content of threats made against her. Brewer even begged Defendants Pineiro, Fast and T. Fletcher for assignment to Protective Custody; said request was denied without explanation by Defendant Pineiro.

The Georgia Department of Corrections is currently under investigation by the United States Department of Justice because of extreme violence and gang supremacy. Defendants were and are intimately aware of the very real threat posed by gang members within state prisons, particularly as relates to extraordinarily vulnerable segments of the prison population, like transgender prisoners. Defendants failed to protect Plaintiff Brewer and, as a result, she was cornered and attacked by known gang members. From the assault, Brewer sustained 3 significantly severe stab wounds (side of head, back of head, arm) and a broken jaw. She was alone, vulnerable, and left to fend for her life against multiple assailants intent on seriously harming, or even killing, her. By failing to respond reasonably in taking steps to ensure Plaintiff Brewer's safety, and by denying her request for protective custody, Defendants Pineiro, Fast and T. Fletcher failed to protect Plaintiff Brewer in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

## Count II

**Plaintiff Suffered Due to the Intentional Callous Disregard and Deliberate Indifference of Defendants Who Exacerbated Her Pain Due to Delaying and Obstructing Access to Serious Medical Treatment.**

After her assault by multiple gang members, Ms. Brewer was taken to the hospital ER for emergency treatment. Plaintiff's doctors at the ER ordered that her jaw be wired and that she be closely monitored and given a liquid diet. Defendant Pineiro obstructed and denied the Plaintiff's access to all emergency medical care. Defendant Pineiro instructed facility medical personnel to not take Ms. Brewer seriously ("he ain't special and we ain't gonna treat him special. Don't let him manipulate y'all. Tell me if he give yall any problems"), instructed kitchen staff to not accommodate Plaintiff Brewer with a liquid diet, and then taunted and humiliated her when she appealed to him ("go on now, with that soft ass shit, or else I'll put your crying ass in the hole for 90 days").

As a direct consequence of Defendant Pineiro's actions and words, the Plaintiff suffered extensively and what was already a terrible ordeal, was drastically exacerbated. Plaintiff suffered extensive pain in her head and arm, but her broken jaw also. As a result of being denied a liquid diet and being unable to physically masticate solid foods, plaintiff involuntarily lost significant weight. However, the amount of emotional pain, psychic anguish, and anxiety she suffered – all because of Defendant Pineiro's cruelty and obstruction – was almost worse. Plaintiff was denied her medical care by an unqualified, non-medical prison official, Defendant Pineiro, in violation of the Eighth and Fourteenth Amendment to the United States Constitution.

### Count III

11

**Plaintiff Suffered From an Unlawful, Excessive Use of Force by Defendants in Response to Her Efforts to Advocate on Her Own Behalf.**

In response to advocacy efforts made on her own behalf, Plaintiff Brewer sustained an unlawful, excessive use of force – amounting to an unqualified, illegal assault on her person – by Defendant Brown. Defendants Brown executed this assault on Plaintiff Brewer in compliance with a direct instruction given by Defendant Pineiro, who said "light his ass up with that mace, man. I don't know why he think he gonna run something, not at my camp. Spray his ass and lock his ass down". The assault occurred after threats issued by Defendant Pineiro. When threats did not deter Plaintiff from continuing to plead on her own behalf, he ordered the unlawful use of force (OC spray) in violation of Plaintiff's rights under the Eighth and Fourteenth Amendments to the United States Constitution.

## Count IV

**Plaintiff Suffered Due to Acts of Illegal, Excessive Force Used for the Sole Purpose of Defendant Pineiro Retaliating Against Her for Exercising Her Constitutional Rights**

The Plaintiff was left in a cell without medical attention, unable to wash herself or cleanse the OC spray from her eyes and body. She was retaliated against by the Defendants for utilizing her rights under the U.S. Constitution. She feels that this was done as an act of terror in order to set an example of ruthlessness in response to prisoners who become too vocal on their own behalf. She suffered significantly, both physically and psychoemotionally, as the OC spray burned her

12

eyes and lungs, and all over her body. She felt abandoned, that she might die, and as a result suffered severe panic attacks and ideations of suicide. The Defendants solely performed these illegal acts in order to harm her and to instill fear. It served no valid penological interest, as Plaintiff never posed a threat to any person or property at any time. And the acts of the Defendants violated the U.S. Constitution.

## VII.    PRAYER FOR RELIEF

Plaintiff Brewer seeks declaratory, injunctive and monetary relief. She requests compensatory, punitive, and nominal damages against the defendants. In addition, she seeks a declaration that the acts and omissions of the defendants, as described herein above, violate the Constitution and her rights under the law. Moreover, she seeks an injunction which would curtail defendants and other GDC officials from placing her in any other circumstances where her safety would be in question. She seeks a formal apology from the defendants and, finally, she seeks the termination of Defendant Pineiro from the employ of the Georgia Department of Corrections.

## VIII.    VERIFICATION

Pursuant to 28 USC § 1746, Plaintiff Terry Brewer hereby declares and verifies under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of her knowledge. Executed on March 23, 2023.

13

Ms. Terry Brewer, Plaintiff