## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

| | | |
|---|---|---|
| TERRY L. BREWER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV422-264 |
| | ) | |
| WARDEN AARON | ) | |
| PINEIRO, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER AND REPORT AND RECOMMENDATION

*Pro se* plaintiff Terry L. Brewer alleges she was subjected to unconstitutional conditions of confinement at Coastal State Prison ("CSP"), related to her gender identity. *See generally* doc. 23; *see also* doc. 27 at 6-7. Defendants Aaron Pineiro and Ricky Brown filed an Answer. Doc. 30. Defendant Tia Fletcher filed a Motion to Dismiss, doc. 31, to which Brewer filed a response, doc. 38. After the Defendant identified by Brewer as "Dr. Fast" failed to timely respond to Brewer's Second Amended Complaint, Brewer filed a motion seeking a default judgment. Doc. 41. Defendant Daniel Fass then appeared, indicated he was improperly named as "Dr. Fast," and moved to set aside default and to permit him to file an out of time responsive pleading. Doc. 44. He also

filed an Answer, doc. 45, and a Motion to Dismiss, doc. 46.  When Brewer

failed to timely respond to Defendant Fass' Motions and correspondence

from the Clerk was returned, giving the appearance that Brewer failed

to provide the Court with a usable address in violation of the Local Rules,

the undersigned recommended that her case be dismissed.  *See* doc. 52.

That same day, the Clerk docketed motions from Brewer seeking

appointment of an attorney, doc. 53, and responding to the Defendants'

motions, doc. 54.[1]  Brewer has also filed objections to the dismissal

recommendation.  Doc. 55.[2]  All of these various motions and issues are

ripe for disposition.

---

[1] Although styled as a "Motion," *see* doc. 54 at 1, Brewer's filing directly responds to Defendant Fass' Motion to Open or Set Aside any Entry of Default, Response to Plaintiff's Motion for Entry of Default, and to Allow Defendant's Late Filing of Answer to Complaint.  *See id.* at 1.  Therefore, the Court construes it as Brewer's response.  *See, e.g.*, *Rameses v. U.S. Dist. Court*, 523 F. App'x 691, 694 (11th Cir. 2013) ("A federal court may recharacterize a *pro se* litigant's motion to create a better correspondence between the substance of the motion and its underlying legal basis.").  The Clerk is **DIRECTED** to terminate the motion.  Doc. 54.

[2] Brewer recently filed a "Motion to Address the Court and Change of Address."  Doc. 57.  The Clerk has noted her new mailing address.  *See generally* docket.  To the extent Brewer seeks additional relief from the Court, it is not clear.  *See* doc. 57.  If she seeks copies of documents filed between September 10, 2023 and February 15, 2024, *see id.*, she may obtain them from the Clerk's office at the standard cost of fifty cents per page.  She is not entitled to free copies of court documents.  *See Jackson v. Fla. Dept. of Fin. Servs.*, 479 F. App'x 289, 293 (11th Cir. 2012).  Therefore, her request is **DENIED**, in part.  Doc. 57.  To the extent she asks the Court to consider her filings, it has done so in this Order and Report and Recommendation.  Therefore, her request is **DISMISSED AS MOOT**, in part.  Doc. 57, in part.

First, given Brewer's filings and submission of an updated address, *see* docs. 53, 54, & 55, the recommended *sua sponte* dismissal is no longer appropriate. There is not "a clear record of delay or willful contempt" to justify the dismissal. *See, e.g.*, *Abdulla v. Southern Bank*, 2022 WL 1478996, at *4 (S.D. Ga. May 10, 2022) (Hall, C.J.) (quoting *Goforth v. Owens*, 766 F.2d 1533, 1535 (11th Cir. 1985)) (quotation marks omitted). Therefore, the prior recommendation of dismissal is **VACATED**. Doc. 52.

Next, for the same reasons discussed in the Court's prior Order, *see* doc. 27 at 2-4, Brewer's request for appointed counsel is **DENIED**. Doc. 53. Brewer has no constitutional right to counsel in this civil case. *Wright v. Langford*, 562 F. App'x 769, 777 (11th Cir. 2014) (citing *Bass v. Perrin*, 170 F.3d 1312, 1320 (11th Cir. 1999)). "Although a court may, pursuant to 28 U.S.C. § 1915(e)(1), appoint counsel for an indigent plaintiff, it has broad discretion in making this decision, and should appoint counsel only in exceptional circumstances." *Id.* (citing *Bass*, 170 F.3d at 1320). Appointment of counsel in a civil case is a "privilege that is justified only by exceptional circumstances, such as where the facts and legal issues are so novel or complex as to require the assistance of a

trained practitioner." *Fowler v. Jones*, 899 F.2d 1088, 1096 (11th Cir. 1990) (citing *Poole v. Lambert*, 819 F.2d 1025, 1028 (11th Cir. 1987), and *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985)).  "[T]his Court has repeatedly found that prisoners do not receive special consideration [for appointed counsel] notwithstanding the challenges of litigation in a case while incarcerated." *Holzclaw v. Milton*, 2019 WL 1474398, at * 1 (S.D. Ga. Apr. 3, 2019) (internal quotation marks and citation omitted); *see also Bell v. Lamb*, 2021 WL 1954739, at * 3 (S.D. Ga. Mar. 30, 2021).  General lack of education, including legal education, is also not a sufficient basis to require appointment of counsel.  *See, e.g., Brown v. Wilcher*, 2021 WL 411508, at *1 (S.D. Ga. Feb. 5, 2021).

The Eleventh Circuit has explained that "the key" to assessing whether counsel should be appointed "is whether the *pro se* litigant needs help in presenting the essential merits of his or her position to the court. Where the facts and issues are simple, he or she usually will not need such help." *McDaniels v. Lee*, 405 F. App'x 456, 457 (11th Cir. 2010) (quoting *Kilgo v. Ricks*, 983 F.2d 189, 193 (11th Cir. 1993)).  Brewer has continued to present "the essential merits of [her] position" to the Court.

There continues to be no indication of any "exceptional circumstance" that warrants appointment of counsel. *Fowler*, 899 F.2d at 1096.

The Court next must address the status of Defendant Daniel Fass, identified as "Dr. Fast, Psychiatrist" in Brewer's Second Amended Complaint. *See* doc. 23 at 2. Daniel Fass waived service on June 12, 2023, *see* doc. 35, and his responsive pleading was due July 3, 2023, *see* Fed. R. Civ. P. 4(d)(3); 12(a)(1)(A)(ii). He did not timely respond, which Brewer pointed out in her request for a judgment against him. *See* doc. 41 at 1; *see also generally* docket. Within the time for responding to Brewer's motion for a default judgment, Fass appeared, moved to set aside default, and sought leave to file an out-of-time Answer. Doc. 44.

As Defendant Fass recognizes, he is in default even though the Clerk has not formally entered his default. *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1337 (11th Cir. 2014). "The court may set aside an entry of default for good cause . . . ." Fed. R. Civ. P. 55(c). As this Court has previously explained:

> While there is no precise formula for assessing "good cause", courts commonly consider "whether the default was culpable or willful, whether setting it aside would prejudice the adversary, and whether the defaulting party presents a meritorious defense." *Compania Interamericana Exp.-Imp., S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951

(11th Cir.1996) (citations omitted).   These factors are not talismanic, and other factors also may be relevant in making a good cause determination.   *Id.*   For example, an additional factor that may be relevant is whether the defaulting party acted promptly to correct the default.   *Id.*   (citing *Dierschke v. O'Cheskey*, 975 F.2d 181, 184 (5th Cir.1992)).   "Whatever factors are employed, the imperative is that they be regarded simply as a means of identifying circumstances which warrant the finding of 'good cause' to set aside a default."   *Id.*

*Wortham v. Brown*, 2015 WL 2152826, at *1 (S.D. Ga. May 7, 2015).   In determining whether a litigant has demonstrated good cause sufficient under Rule 55(c), the Court is mindful of the Eleventh Circuit's "strong preference that cases be heard on the merits."   *Perez*, 774 F.3d at 1342; *see also Wahl v. McIver,* 773 F.2d 1169, 1174 (11th Cir. 1985) ("[W]e must respect the usual preference that cases be heard on the merits rather than resorting to sanctions that deprive a litigant of his day in court.").

Fass explains he waived service but, given that the documents referred to a psychiatrist, "Dr. Fast," and he is a psychologist, "Dr. Fass," and based on his misunderstanding of the legal documents, he did not appreciate his obligation to respond.   Doc. 44 at 3; *see also* doc. 44-1. Additionally, because he no longer worked at Coastal State Prison, he did not forward the legal documents to his employer.   Doc. 44 at 3.   Once Brewer filed her Motion for Default Judgment, Fass, through his current

counsel, learned of "his status as a Defendant in this action and of the requirement of his ongoing cooperation and participation in the proceedings." *Id.* Plaintiff opposes his motion but does not directly respond to its substance. *See* doc. 54 at 1.

While Fass' failure to act, despite executing a waiver of service of Brewer's lawsuit, was improper, it does not indicate that his default was willful, much less culpable. The other factors also weigh in favor of setting aside default. Although Brewer has opposed the motion in form, if not in substance, there is no indication that she will be prejudiced if Fass' default is set aside. Fass has already submitted an Answer along with his motion which raises defenses that are, as explained below, actually meritorious. *See generally* doc. 45. Finally, it appears that Fass acted promptly once he understood that he was in default. Fass' showing, considering the "strong preference that cases be heard on the merits," is convincing. *Perez*, 774 F.3d at 1342. For these reasons, Fass' Motion to Set Aside Default is **GRANTED**.[3] Doc. 44. Brewer's request for a default judgment is, therefore, **DISMISSED AS MOOT**. Doc. 41.

---

[3] Under 28 U.S.C. § 636(b)(1)(A), a magistrate judge may issue orders on pretrial, non-dispositive matters. Courts in this Circuit have treated the setting aside of the entry of default as a non-dispositive matter. *See Rodriguez v. Powell,* 853 F. App'x

Fass proactively filed his Answer to Brewer's Second Amended Complaint the same day he filed his Motion to Set Aside Default. *See* doc. 45. Given the decision to set aside his default, that Answer is now Fass' operative responsive pleading. However, Fass also filed a Motion to Dismiss shortly after he filed his Answer. *See* doc. 46. Because the Motion to Dismiss is procedurally improper, the implication of that impropriety must be addressed before turning to the motion's merits.

---

613, 615-16 (11th Cir. 2021) (affirming district court's affirmance of magistrate judge's decision to set aside clerk's default under the "clearly erroneous" standard of Fed. R. Civ. P. 72(a)); *Carey v. Hannah, Kendrix, Zachary & Assoc.*, 2011 WL 13322458, at *1, n. 1 (N.D. Ga. Sept. 2, 2011) ("The setting aside of the entry of default is not a dispositive matter."); *Pinkston v. Atlanta Reg'l Comm'n*, 2007 WL 4224814, at *2 (N.D. Ga. Nov. 27, 2007) (reviewing a Magistrate Judge's ruling on a motion to set aside entry of default for clear error under Fed. R. Civ. P. 72(a) because the motion was not on a dispositive matter). Courts in other circuits have, too. *See, e.g.*, *Johnson v. New York Univ.*, 324 F.R.D. 65, 67 n.2 (S.D.N.Y. 2018) ("A motion to set aside an entry of default is subject to disposition by a magistrate judge under 28 U.S.C. § 636(b)(1)(A)."); *J&J Sports Prod., Inc. v. Martinez*, 2013 WL 2147790, at *1 n. 2 (M.D.N.C. May 16, 2013) ("The entry of default (and thus the decision to set aside or to leave in effect such an entry) constitutes a pretrial matter that does not dispose of any claim or defense . . . ."); *Jou v. Adalian*, 2009 WL 4798204, *1 (D. Haw. Dec. 3, 2009) ("[A] motion to set aside entry of default raises a nondispositive issue such that [the order disposing of it] may be reversed only if it is 'clearly erroneous or contrary to law.'"); *cf. Business Credit Leasing, Inc. v. City of Biddeford*, 770 F. Supp. 31, 32 (D. Me. 1991) (treating ***denial*** of motion to set aside default as dispositive because ultimate effect was dispositive of defenses). While some federal courts have considered a Rule 55(c) motion as ***potentially*** a dispositive motion, *see, e.g.*, *Conetta v. Nat'l Hair Care Ctrs., Inc.*, 236 F.3d 67, 74 (1st Cir. 2001) ("It is not clear whether the Rule 55(c) motion to vacate the default could be regarded as a 'pretrial' motion; linguistic and policy arguments can be made either way . . . ."), the overwhelming weight of the authority is that the motion is a non-dispositive, pre-trial matter than can be disposed of by a magistrate judge's order.

Federal Rule of Civil Procedure 12(b) provides that "[e]very defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required."  Fed. R. Civ. P. 12(b).  However, a party raising by motion the defenses enumerated under the rule must do so "**before** pleading if a responsive pleading is allowed."  *Id.* (emphasis added).  Defendant Fass filed his motion to dismiss **after** filing his Answer, if only just.  *Compare* doc. 46 (Motion to Dismiss), *with* doc. 45 (Answer).  "Under the unambiguous, mandatory language of Rule 12(b), a motion to dismiss must be made before an answer is filed."  *Brisk v. City of Miami Beach, Fla.*, 709 F. Supp. 1146, 1147 (S.D. Fla. 1989).

Even though Defendant raised the same issues presented in his Motion to Dismiss in his responsive pleadings, *see, e.g.,* doc. 45 at 1-3, that does not necessarily save him from his procedural misstep.  *See Walker v. Mead*, 2014 WL 2778162, at *1 (M.D. Fla. June 18, 2014) ("[T]o the extent the Motion seeks dismissal under Federal Rule of Civil Procedure 12(b), any right thereto has been waived because [defendant] filed his Motion contemporaneously with his answer, in contravention of Rule 12(b)'s requirement that a motion to dismiss be filed before the responsive pleading."); *see also Brisk*, 709 F. Supp. at 1147 ("Once the

defendants filed their answer, it became procedurally impossible for the Court to rule on the motion to dismiss."); *cf. Ward v. Glynn Cnty. Board of Comm'rs*, 2016 WL 4269041, at *7 (S.D. Ga. Aug. 11, 2016) (declining to find that defendant's filing of an answer on the same day as its motion to dismiss for failure to state a claim rendered the motion moot, where motion was submitted before the responsive pleading).

Even though Fass' motion to dismiss is procedurally improper, it is not necessarily fatal to the underlying substance of his arguments. Some district courts in the Eleventh Circuit simply deny as moot an untimely filed motion to dismiss. *See Walker*, 2014 WL 2778162, at *1, *3 (denying motion to dismiss filed simultaneously with answer and collecting cases where "[d]istrict [c]ourts in the Eleventh Circuit [have] routinely den[ied] motions to dismiss as moot which are filed simultaneously with or after an answer is filed."). However, other courts address the substantive arguments, at least those made under Rule 12(b)(6), "as if they had been properly raised in a motion for judgment on the pleadings." *Brisk*, 709 F. Supp. at 1147-48; *see also Tamiami Condo. Warehouse Plaza Ass'n, Inc. v. Markel Am. Ins. Co.*, 2019 WL 4863378, at *2 (S.D. Fla. Oct. 2, 2019) (noting that Rule 12(b) "requires that all . . . motions be filed prior to a

responsive pleading," and construing Rule 12(b)(6) motion as a motion for judgment on the pleadings pursuant to Rule 12(c)); *Alilin v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 7734262, at *4 (M.D. Fla. Jan. 30, 2014) (construing a post-answer motion brought under Rule 12(b)(6) as a motion for judgment on the pleadings brought under Rule 12(c), since the standards are the same); *see also* Fed. R. Civ. P. 12(i) (contemplating motions requesting that the Court hear and decide any defenses raised "in a pleading or by motion" prior to trial).   A district court's determination as to how to proceed is discretionary. *Green v. Henry Cnty. Comm'n*, 2020 WL 974388, at *3 (M.D. Ala. Feb. 28, 2020).   Here, the Court should exercise that discretion to consider Defendant Fass' arguments raised in his Motion to Dismiss.

The Court turns, then, to the merits of the Motions to Dismiss filed by Defendant Fletcher and Defendant Fass.   *See* docs. 31 & 46.   Brewer identifies Defendant Fletcher as the "Mental Health Director, Coastal State Prison" and Defendant Fass (who she misidentifies as "Fast") as a "Psychiatrist, Coastal State Prison."   Doc. 23 at 2.   Brewer alleges she communicated concerns to Defendant Fletcher about her safety upon her arrival at CSP while asking for placement within a specific protective

unit.  Doc. 23 at 4.  Brewer alleges that, in response, Fletcher criticized her for being "dramatic."  *Id.*  Brewer alleges she then went to speak with Defendant Fass and conveyed her same concerns, but Defendant Fass "would not intervene in [the warden's] decision on this matter and recommended that Ms. Brewer utilize the grievance process in response to her cries regarding her life being imperiled."  *Id.* at 4-5.  She alleges that Defendants Fletcher and Fass failed to protect her.  *Id.* at 9-10.

Defendant Fletcher argues that Plaintiff failed to exhaust her administrative remedies as required by the Prison Litigation Reform Act ("PLRA") and that her Amended Complaint fails to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  Doc. 31 at 1; *see also generally* doc. 31-1 at 4-11.  Defendant Fass raises the same two arguments for dismissal.  *See* doc. 46 at 1; *see also generally* doc. 46-1 at 4-12.  Brewer has responded to each motion. *See generally* docs. 38 & 54.  For efficiency, the Court first jointly addresses Defendants' exhaustion arguments, and then turns to their Rule 12(b)(6) arguments.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions . . . by a prisoner

confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."   42 U.S.C. § 1997e(a).  Exhaustion of available remedies is mandatory; "[a]nd that mandatory language means a court may not excuse a failure to exhaust, even to take [special] circumstances into account." *Ross v. Blake*, 578 U.S. 632, 639 (2016).  The statute's plain language "means that until such administrative remedies as are available are exhausted, a prisoner is precluded from filing suit in federal court." *Leal v. Georgia Dept. of Corrs.*, 254 F.3d 1276, 1279 (11th Cir. 2001) (internal quotation marks and citation omitted).   "To exhaust administrative remedies in accordance with the PLRA, prisoners must *properly* take each step within the administrative process." *Bryant v. Rich*, 530 F.3d 1368, 1378 (11th Cir. 2008) (emphasis added) (internal quotation marks and citation omitted); *see also Woodford v. Ngo*, 548 U.S. 81, 84 (2006) (holding "that proper exhaustion of administrative remedies is necessary," to satisfy the PLRA).  "Where exhaustion . . . is treated as a matter in abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits [of the underlying claims] and

the parties have sufficient opportunity to develop a record." *Bryant,* 530

F.3d at 1376.

When a defendant files a motion to dismiss based on a prisoner's

failure to exhaust administrative remedies, the Court follows a two-step

process. *See Turner v. Burnside*, 541 F.3d 1077, 1082-83 (11th Cir. 2008).

As the Eleventh Circuit has explained:

> First, the court looks to the factual allegations in the
> defendant's motion to dismiss and those in the plaintiff's
> response, and if they conflict, takes the plaintiff's version of
> the facts as true. If, in that light, the defendant is entitled to
> have the complaint dismissed for failure to exhaust
> administrative remedies, it must be dismissed. [Cit.] . . . If
> the complaint is not subject to dismissal at the first step, . . .,
> the court then proceeds to make specific findings in order to
> resolve the disputed factual issues related to exhaustion.
> [Cit.] The defendants bear the burden of proving plaintiff has
> failed to exhaust his administrative remedies.

*Id.* at 1082 (citations omitted). "[O]nce [the defendant's] burden has been

met, the burden of going forward shifts to the plaintiff, who . . . must

demonstrate that the grievance procedure was 'subjectively' and

'objectively' unavailable to him." *Geter v. Baldwin State Prison*, 974 F.3d

1348, 1356 (11th Cir. 2020).

Fletcher and Fass each assert, based on a declaration from the

Chief Counselor and Grievance Coordinator at Coastal State Prison, doc.

31-2, that Brewer submitted three grievances at CSP, and only one, identified as Grievance 340032, is related to assaults close in temporal proximity to those alleged in Brewer's Amended Complaint. Doc. 31-1 at 2-3; doc. 46-1 at 2-3. They both argue that Grievance 340032 does not mention them, or any communications Brewer alleges to have had with them. Doc. 31-1 at 2; doc. 46-1 at 3. Additionally, they argue the grievance was rejected, initially and on appeal, on procedural grounds. Doc. 31-1 at 6-7, doc. 46-1 at 7. Therefore, they each argue Brewer's claims against them are unexhausted.

In response to Fletcher's Motion to Dismiss, Brewer challenges the veracity of the Grievance Coordinator's declaration because it only identifies three grievances she filed at CSP, but she contends she filed "over 6 grievances." Doc. 38 at 1, 4. Similarly, in response to Fass' Motion to Dismiss, she contends she provided "over '4' grievance notifications that [are] not on records [sic] of this court . . . ." Doc. 54 at 2. Brewer's Amended Complaint attached copies of six receipts for grievances. Doc. 8 at 26-32. Taking Plaintiff's allegations as true as required under the first *Turner* step, dismissal at step one is not proper. Therefore, the Court must proceed to step two. *Turner,* 541 F.3d at 1082.

At step two, the Court must "make specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082. Defendants Fletcher and Fass both cite to the Grievance Coordinator's declaration which identifies three grievances Brewer filed at CSP, Grievance 339578, dated June 3, 2022, Grievance 340032, dated June 15, 2022, and Grievance 343401, dated September 14, 2022, and an additional two grievances Brewer filed at Johnson State Prison, Grievance 345562, dated November 3, 2022, and Grievance 345547, dated November 4, 2022. Doc. 31-2 at 6-7, 28. A review of the three CSP grievances attached to the Grievance Coordinator's declaration confirms both Fletcher and Fass' assertions that the grievances do not address any alleged communication to or inaction by either of them related to Brewer's concerns for her safety while at CSP. *See* doc. 31-2 at 28-57.[4]

The failure to specifically identify Fletcher and Fass in her grievances, however, is not necessarily fatal to Brewer's claims against them. "A prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim." *Parzyck v. Prison Health Servs.,*

---

[4] According to Brewer's own allegations, the two Johnson State Prison grievances, filed on November 3, 2022 and November 4, 2022, relate to "assaults while . . . at Johnson State Prison." Doc. 1 at 4.

16

*Inc.*, 627 F.3d 1215, 1218-19 (11th Cir. 2010).  Nevertheless, a review of the three CSP grievances shows that none of them even arguably raise a failure to protect complaint upon Brewer's transfer to CSP.  Additionally, the only one that is even remotely connected to Brewer's allegations against Fletcher and Fass was rejected on procedural grounds and therefore does not constitute proper exhaustion.

Grievance 339578 alleges that Brewer was assaulted and then was not provided proper medical care.  *See* doc. 31-2 at 7; *see also id.* at 37.  It does not raise any complaint related to any prison official's failure to protect her, or failure to move her to a particular unit, before that attack. *Id.* at 37.  Grievance 340032 references Brewer's general fear for her safety as a transgendered woman and alleges that she told prison officials, albeit not Fletcher or Fass, about an attack she contends was a result of her transgender identity.  *Id.* at 45.  However, it does not complain about any prison official's failure to move her *before* the attack, which is the basis of her claims against Fletcher and Fass.  *See* doc. 23 at 9-10.  Grievance 343401 generally alleges discrimination because she is transgender.  Doc. 31-2 at 55.  It does not raise any issue with any prison official's failure to protect her at any point.  *Id.*

17

In addition to the factual issues with Grievance 340032 and Grievance 343401, these grievances were rejected based on procedural issues. Grievance 340032 was rejected at the institutional level for failing to follow proper grievance procedures. Doc. 31-2 at 43, 48. Grievance 343401 was similarly rejected. *Id.* at 53. "The PLRA requires 'proper exhaustion' that complies with the 'critical procedural rules' governing the grievance process." *Dimanche v. Brown*, 783 F.3d 1204, 1210 (11th Cir. 2015). "The prison's requirements, and not the PLRA, define the boundaries of proper exhaustion[.]" *Pavao v. Sims*, 679 F. App'x. 819, 823 (11th Cir. 2017). Because both Grievance 340032 and Grievance 343401 were rejected on procedural grounds during the administrative process, they do not constitute proper exhaustion of Brewer's administrative remedies, even if they could possibly be construed as raising the issue of Fletcher or Fass' alleged failure to protect her prior to her being attacked at CSP. Therefore, unless Brewer can identify another grievance, not included in the official grievance report attached to the Grievance Coordinator's declaration, her claims against Fletcher and Fass appear unexhausted.

18

Brewer urges the Court to review the documents she attached to her First Amended Complaint which she contends contain grievance notifications that are otherwise "not on records of this court," doc. 54 at 1-2; presumably, she means notifications of grievances that are not included in the grievance record provided by Defendants. *See id.*; *see also* doc. 38 at 4.[5]  Brewer attached several documents to her First Amended Complaint, and the Court has parsed through those documents to determine whether they support Brewer's argument.

First, Brewer attached a copy of an Active Grievances Process Form dated December 19, 2022, where Brewer asked the prison to "drop" Grievance 345562 and Grievance 345547—both identified as Johnson State Prison grievances in Brewer's grievance history, *see* doc. 31-2 at 28—in favor of "the other 2 grievances new." Doc. 8 at 21.  Immediately following that document are copies of two grievances, presumably the "2 grievances new" referred to in the prior form, both dated December 9, 2022, and related to November 2022 incidents at Johnson State Prison.

_____

[5] Brewer also alleges the Grievance Coordinator has a "conflict of interest," arguing she is biased in favor of Fletcher.  Doc. 38 at 4.  Brewer's conclusory allegations of bias, based on an alleged friendly relationship between co-workers, is not sufficient to overcome Defendants' showing.  Moreover, the Grievance Coordinator's declaration attaches documents to support her assertions.  *See generally* doc. 31-2.

*Id.* at 22-23.  These documents, which are not related to CSP at all, do not overcome the Defendants' showing.

Next, Brewer attached copies of the Warden's/Superintendent's Grievance Response form and Grievance Appeal Response for CSP Grievance 339578.  Doc. 8 at 24-25.  Brewer then attached a copy of the receipt for her appeal of CSP Grievance 343401.  *Id.* at 26.  Grievance 339578 and Grievance 343401 are both included as attachments to the Grievance Coordinator's declaration, and neither includes any assertion against Fletcher or Fass, as discussed above.  *See* doc. 31-2 at 29-41 (Grievance 339578), 52-57 (Grievance 343401).  These documents do not overcome the Defendants' showing.

Finally, Brewer attached copies of six grievance receipts.  Doc. 8 at 27-32.  One of those receipts, dated December 9, 2022, appears to correspond to the "new" grievances discussed in the Active Grievances Process Form, both dated December 9, 2022 and arising from incidents in November 2022 at Johnson State Prison.  *See id.* at 30.  Of the remaining five receipts, three coordinate directly to grievances identified by the Grievance Coordinator: one from Coastal State Prison in September 2022, *id.* at 28, and two from Johnson State Prison in

November 2022, *id*. at 27, 29.  None of these documents overcome the Defendants' showing.

Although most of Brewer's records directly correspond to the records provided by Defendants, Brewer attaches two receipts from June 2022 which require additional analysis.  Doc. 8 at 31-32.  Defendants identify two grievances filed by Brewer in June 2022; Grievance 339578, filed June 3, 2022, doc. 31-2 at 29-41, and Grievance 340032, filed June 16, 2022, *id*. at 42-51.  Brewer's submission does not include a receipt for the June 3, 2022 grievance, but does include *two* receipts for grievances dated June 16, 2022.  Doc. 8 at 31-32.  At first blush, then, it appears that Brewer is correct, and the Defendants' records are incomplete.  However, Brewer's own argument explains that grievances she turned in "never got filed" because of prison policy that an offender may only have two active grievances at a time.  *See* doc. 38 at 4. Additionally, Brewer never specifically alleges that she filed a grievance related to either Fass or Fletcher and has not provided a copy of any actual grievance related to either of them.  Instead, in response to Fletcher's Motion to Dismiss, she explicitly states that she "never got a chance to talk to mental health." *Id.*  While her complaints about the prison's policy that only two

grievances may be active at a time is considered below when analyzing whether the grievance process was unavailable to her, it does not overcome Defendants Fletcher and Fass' showings that Brewer did not exhaust her administrative remedies related to her claims against them.

Because Defendants have met their burden of demonstrating Brewer's failure to exhaust as to the claims against them, the burden shifts to Brewer to demonstrate that the grievance procedure was 'subjectively' and 'objectively' unavailable. *Geter*, 974 F.3d at 1356. Her complaints about the prison's policy of limiting a prisoner to two active grievances, *see, e.g.* doc. 31-2 at 14, doc. 38 at 4, charitably, implicate an argument that the grievance process was not available to her. In similar circumstances, the United States District Court for the Middle District of Georgia has addressed such assertions as factual disputes at the second *Turner* step. *See Black v. Rayburn* 2021 WL 6884740, at *6 (M.D. Ga. Dec. 14, 2021). As the Eleventh Circuit has explained, the Defendant's initial burden is to show that the administrative remedy is "generally available." *See Wright v. Georgia Dept. of Corrs.*, 820 F. App'x 841, 845 (11th Cir. 2020). To the extent Brewer even disputes it, Defendants have borne their initial burden of showing that a grievance

procedure was available at CSP. The Grievance Coordinator's declaration and exhibits detail the grievance process, including a copy of the applicable policy at the time Brewer submitted her grievances. *See generally* doc. 31-2. Brewer's own filings, discussed above, show that a grievance process was available and that she took advantage of it.

Because Defendants have borne their burden of showing that the administrative remedy was generally available, the question becomes whether Brewer has borne her burden to show that the remedy was subjectively and objectively unavailable to her. *Geter*, 974 F.3d at 1356. She has not. While *Ross* unequivocally rejected any circumstantial exception to the PLRA's exhaustion requirement, it also recognized that the requirement "hinges on the 'availability' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." 578 U.S. at 642 (alterations omitted). A remedy is "available" when it is "capable of use to obtain some relief for the action complained of." *Id.* (internal quotation marks and citation omitted). The Eleventh Circuit has considered, and rejected, the argument that the two-grievance limit renders the process "unavailable" for purposes of the PLRA. *See Pearson v. Taylor*, 665 F. App'x 858, 867-

68 (11th Cir. 2016). Therefore, Brewer has not shown that the process was unavailable. Because Defendants have met their burden of showing Brewer failed to exhaust her claims against them, their Motions to Dismiss for failure to exhaust should be **GRANTED**. Docs. 31 & 46.

Even if Brewer's claims against Fletcher and Fass were exhausted, Defendants' motions would be appropriately granted for the independent reason that Brewer has failed to state a claim against either of them in her Second Amended Complaint. *See* doc. 31-1 at 8-11; doc. 46-1 at 9-12. Brewer alleges that upon her transfer to CSP, she "identified herself as a transgender prisoner, informed staff that they could consult her records . . . for confirmation, and she informed staff that she felt that her safety and wellbeing were in imminent serious danger of severe harm." Doc. 23 at 4. She alleges she spoke to, among other staff members, Fletcher and Fass. *Id.* She contends she informed Fletcher on intake day that "she did not feel safe, that she had been viciously attacked while at GDCP, and that credible threats to her life had been issued by gang members at GDCP when it became known that she was complaining about being attacked." *Id.* She therefore asked Fletcher, and co-defendant Warden Pineiro, to be placed in protective custody. *Id.* Fletcher allegedly

responded: "Don't be so dramatic." *Id.* Unsatisfied with Fletcher and the Warden's response, Brewer then claims she "went and spoke with . . . Defendant Fas[s], hoping that as the chief mental health clinician [he] might overrule or reason with Defendants Pineiro and Fletcher." *Id.* She alleges she told Fass "she seriously feared for her life and that she had already been assaulted for her identity as a visible Trans woman in a southern men's facility while at GDCP." *Id.* at 5. She claims that within two weeks she was attacked by "gang affiliated prisoners, from the same gang that she warned Defendants Pineiro, Fletcher, and Fas[s] about." *Id.*

Defendants argue Brewer fails to state a claim against them under Federal Rule of Civil Procedure 12(b)(6). *See* doc. 31, doc. 46. To avoid dismissal, plaintiff's pleadings must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The pleadings cannot rest merely on an "unadorned, the-defendant-unlawfully-harmed-me accusation," *id.* at

678, and the facts offered in support of the claims must rise to a level greater than mere speculation, *Twombly*, 550 U.S. at 555. Stated otherwise, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" *Id.* at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Brewer's only claim against both Fletcher and Fass is that they failed to protect her from a later assault. Doc. 23 at 9-10. "[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal quotations and citations omitted). "It is not, however, every injury suffered by one inmate at the hands of another that translates into a constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. Merely negligent failure to protect an inmate from attack does not justify liability under § 1983. *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990). "Prison officials must have been deliberately indifferent to a known danger before we can say that their failure to intervene offended 'evolving standards of decency,' thereby rising to the level of a constitutional tort." *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)). The threat must rise to the level of "a strong likelihood,

rather than a mere possibility before a guard's failure to act can constitute deliberate indifference." *Id.* (internal quotation marks and citation omitted).

Fletcher and Fass argue that Brewer's allegations against them fail to state a claim because she fails to allege sufficient facts that could establish that either of them failed to intervene with a "known danger." Doc. 31-1 at 10 (quoting *Brown*, 894 F.2d at 1537); doc. 46-1 at 11 (same). Brewer does not allege that she conveyed to Fletcher and Fass any specific threat against her by anyone at CSP; instead, she alleges she told them about "gang violence she had been subjected to at her previous camp and credible threats of future violence that had been issued to her." Doc. 23 at 9-10. Her response to Fletcher's Motion to Dismiss reiterates that the threats were related to her incarceration at a different facility. Doc. 38 at 3.

As the Eleventh Circuit has made clear, a successful failure-to-protect claim "will generally require some further reason—beyond the plaintiff having informed the defendant officers of the threat—that a prison official could have concluded that a particular threat evidenced a substantial threat, rather than the mere possibility, of serious harm."

*Marbury v. Warden*, 936 F.3d 1227, 1236 (11th Cir. 2019). Brewer's allegations, conveying threats from a separate facility, do not meet that standard. This Court has already told her as much; in screening her now-superseded First Amended Complaint, the Court said: "[t]he fact that [Brewer] informed several defendants of general concerns related to her gender identity and conflicts with gangs does not allege a sufficiently clear threat." Doc. 9 at 11-12 (citing *Gant v. Campbell*, 4 F. App'x 254, 256 (6th Cir. 2001) (expression of general concern of attack by gang members was insufficient to allege a failure-to-protect claim); *Beasley v. Danzey*, 2017 WL 6003098, at *5 (M.D. Ala. Oct. 13, 2017) ("The general allegations . . . regarding a potential threat . . . from . . . unidentified gang members" were not sufficient to support a failure-to-protect claim); *Graham v. Neel*, 2010 WL 4604608, at *5 (N.D. Fla. Oct. 5, 2010) ("general expression of fear of . . . gang members," alleged only "a mere possibility of harm"); *Marbury*, 936 F.3d at 1237 (distinguishing cases in which "a series of threats that contained enough specific information," were sufficient to support a failure-to-protect claim from a "vague statement that conveys nothing about the nature of the anticipated risk,"

that are insufficient)).  Therefore, Defendants' Motion to Dismiss for failure to state a claim should be **GRANTED**.[6]  Docs. 31 & 46.

Because Brewer failed to exhaust her claim against Defendants Fletcher and Fass and fails to state a claim against Defendants Fletcher and Fass, their Motions to Dismiss should be **GRANTED**.  Doc. 31, doc. 46.  Fletcher and Fass should be **DISMISSED**.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.  Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties.  The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."  Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

---

[6] Generally, when a more carefully drafted complaint might state a claim, a district court should give a pro se plaintiff at least one chance to amend the complaint before the court dismisses the action. *Jenkins v. Walker*, 620 F. App'x 709, 711 (11th Cir. 2015).  Brewer's Second Amended Complaint afforded her that opportunity. *Compare* doc. 9 (recommending dismissal of failure to protect claims on Jan. 27, 2023), *with* doc. 23 (Second Amended Complaint filed April 3, 2023).  In any event, the objections period discussed below will afford Brewer **one final chance** to explain why her failure to protect claims against Fletcher and Fass should not be dismissed.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

In summary, the prior recommendation of dismissal is **VACATED**. Doc. 52. Brewer's request for appointed counsel is **DENIED**. Doc. 53. Fass' Motion to Set Aside Default is **GRANTED**. Doc. 44. Brewer's request for a default judgment is **DISMISSED AS MOOT**. Doc. 41. Defendants Fletcher and Fass' Motions to Dismiss should be **GRANTED**. Docs. 31 & 46. The Clerk is **DIRECTED** to terminate the motion at docket entry 54, which the Court construes as Brewer's response to Defendant Fass' Motions. Brewer's Motion to Address the Court is **DENIED**, in part, and **DISMISSED AS MOOT**, in part. Doc. 57.

Even if the District Judge adopts this recommendation, and Fletcher and Fass are dismissed, Brewer's claims against Defendants

Pineiro and Brown will remain pending.  *See* doc. 30.  Therefore, the Clerk is **DIRECTED** to lift the stay imposed by the Court's prior Order, *see* doc. 47 at 4, and enter an Amended Scheduling Notice setting the close of discovery as April 26, 2024, and the last day to file motions, including summary judgment motions, as May 27, 2024.

     **SO ORDERED AND REPORTED AND RECOMMENDED,** this 27th day of February, 2024.

_____

CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA